**STATE OF WEST VIRGINIA**

*In re* S.C. and N.D.

No. 20-0165 (Mercer County 18-JA-85-WS and 18-JA-86-WS)

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Custodian/Guardian T.K., by counsel E. Ward Morgan, appeals the Circuit Court of Mercer County's January 21, 2020, order terminating her custodial and guardianship rights to S.C. and N.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, David B. Kelley, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her custodial and guardianship rights and erred in not imposing a less-restrictive disposition than the termination of custodial and guardianship rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner and her husband abused controlled substances and were arrested and incarcerated on charges of transferring and receiving stolen property. The DHHR also alleged that petitioner and her husband

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, it should be noted that although petitioner is not the biological parent of either child, the circuit court's dispositional order terminated petitioner's parental rights. West Virginia Code § 49-4-601(b) permits a petition to be filed against "each parent, *guardian*, *custodian*, or person standing *in loco parentis* [that] is alleged to have abused or neglected the child." (Emphasis added). Given that petitioner is not the children's parent and, instead, exercised custody over the children, this memorandum decision will refer to the termination of her custodial and guardianship rights only.

1

were arrested and charged with breaking and entering, grand larceny, and conspiracy in June of 2017. According to the DHHR, petitioner was granted legal guardianship of S.C. in June of 2017, and had been the primary caregiver for N.D. throughout his life.

Petitioner stipulated to the allegations in the petition and was granted a post-adjudicatory improvement period. In May of 2018, petitioner pled guilty to transferring or receiving stolen property and was sentenced to an indeterminate one-to-ten-year term of incarceration to be served on home confinement with a special condition that she participate in her family case plan. Later, in July of 2018, petitioner violated the terms of her home confinement, which resulted in ninety days of incarceration. Following petitioner's release, she again violated her home confinement by using Suboxone, and she was incarcerated until mid-November, 2018.

In January of 2019, petitioner moved for a post-dispositional improvement period, and, upon representations that she was participating in services and having positive visitations with the children, the circuit court granted the motion. Later, at a review hearing in July of 2019, the circuit court was advised that petitioner instructed the children to lie about what they ate during an overnight visitation, which petitioner denied. Thereafter, petitioner's visitations were limited to day visits. Then, in August of 2019, petitioner stopped attending therapy.

The circuit court held the final dispositional hearing in January of 2020. The DHHR presented evidence that the children had been in its custody for twenty-one months, and petitioner had failed to fully comply with the individualized and family counseling terms of her case plan during that time. According to petitioner's case worker, petitioner expressed a preference for an individual therapy program and attended that program for some time in 2018. However, petitioner failed to complete her therapy program in 2019, after she was released from incarceration. Petitioner's case worker testified that visitations were progressing and going well until the first overnight visitations when petitioner instructed the children to lie about what they ate during the visit. On cross-examination, the case worker admitted telling petitioner in June of 2019, that the DHHR was "done" with her and started pursuing termination of her parental rights at that time. The children's therapist confirmed that the children were told to "lie about not having dinner." According to the therapist, the children also reported that petitioner did not have a set bedtime or mealtime during visitations. The therapist further opined that the children deserved stability, which petitioner could not provide. The children's foster mother testified that the children exhibited increased negative behaviors before and after visitations with petitioner. Additionally, the foster mother testified that N.D. disclosed that petitioner told him to say that he ate grilled chicken for dinner on one occasion. However, N.D. confessed that "for dinner that evening they had actually split a can of soup that they had found," and he "broke down in tears" afterwards because "he felt like he betrayed [petitioner's] trust." Petitioner's parenting and adult life skills provider testified that petitioner fully participated in those classes. The provider opined that she believed petitioner could safely parent the children. The visitation supervisor testified that the children enjoyed the visitations and that petitioner was appropriate and engaged with them. Petitioner acknowledged that she was aware that her family case plan required individual and family counseling, but that she failed to complete either requirement.

Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. In so doing, the

court considered petitioner's instruction to the children to withhold information from the foster parents and the DHHR, and the testimony of the therapist that the children would not be provided a stable home in petitioner's custody. The circuit court further considered that the children had been out of petitioner's home for twenty-one months, which was prolonged by petitioner's violations of her home confinement. The circuit court concluded that it was necessary for the children's welfare to terminate petitioner's custodial and guardianship rights to the children. The circuit court's decision was memorialized by its January 21, 2020, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her custodial and guardianship rights after the DHHR "gave up on her" in June of 2019. Petitioner asserts that the DHHR has a statutory duty to monitor the participation of a parent during an improvement period and that it failed to do so between December of 2018 and May of 2019, during petitioner's post-dispositional improvement period. Without citing any legal authority, petitioner argues that the DHHR's duty to monitor implies a duty to provide "guidance" and "offer constructive advice" as well. We find this argument unsupported and unpersuasive.

West Virginia Code § 49-4-610(5) provides that "[w]hen any respondent is granted an improvement period pursuant to this article, the department shall monitor the progress of the person in the improvement period." Here, however, petitioner presents no evidence that the DHHR failed to monitor her progress during her post-dispositional improvement period. To the contrary, the DHHR prepared and filed three court summaries detailing petitioner's progress in her improvement period from December of 2018 to July of 2019. Upon review of these summaries, it is clear that the DHHR and petitioner continued to have multidisciplinary team ("MDT") meetings

---

[2]The children's parents' parental rights were terminated below, and petitioner's now ex-husband and the children's alleged custodian relinquished his custodial rights. According to the parties, the permanency plan for the children is adoption in their current foster placement.

and discuss issues in the case. There is no indication in the record that the DHHR did not properly monitor petitioner's progress. Further, contrary to petitioner's assertion, the DHHR was under no statutory obligation to provide her "constructive advice." Petitioner was fully aware of the terms of her improvement period and was responsible for the completion of those terms. *See* W. Va. Code § 49-4-610(4) ("When any improvement period is granted to a respondent pursuant to this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period."). The DHHR made reasonable efforts to reunify petitioner and the children, but petitioner frustrated those efforts through her own actions.

Petitioner's failure to complete the terms of her improvement period further supports the circuit court's termination of her custodial and guardianship rights. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate an abusing parent's[3] custodial and guardianship rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. The circuit court may find that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

W. Va. Code § 49-4-604(d)(3). Here, petitioner failed to complete the terms of a reasonable family case plan, and the children's welfare continued to be threatened in her care. As noted above, petitioner failed to complete the individual or family therapy portions of her case plan. More concerning, petitioner encouraged the children to withhold information from their foster parents and the DHHR regarding overnight visitation in her home. This conduct clearly caused emotional distress to the children, as evidenced by testimony that N.D. "broke down into tears" after disclosing what had actually occurred during overnight visitation to his foster mother. Finally, the children's therapist opined that, based on the children's disclosures, petitioner could not provide them with stability in her home. Based on this evidence, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's custodial and guardianship rights was in the children's best interests.

Petitioner also argues that the circuit court erred in terminating her custodial and guardianship rights because the DHHR failed to make reasonable efforts to reunify the family. She asserts that she made multiple positive changes throughout the proceedings, yet the DHHR "gave up on her" in June of 2019, after petitioner instructed the children to withhold information related to their overnight visitation. Despite this comment from petitioner's DHHR case worker, petitioner continued to receive services, such as adult life skills, parenting classes, and supervised visitations, for several more months. Accordingly, we agree with the circuit court's finding that the DHHR

---

[3]Pursuant to West Virginia Code § 49-1-20, the term "abusing parent" includes "guardian, or other custodian."

made reasonable efforts in this case. Petitioner fails to address the issues upon which the circuit court based its findings that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, namely petitioner's decision to stop pursuing individual and family therapy and her instruction to the children to withhold information from other parties in the case. We have previously held that

> "[t]ermination of parental[, custodial, and guardianship] rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, because we find no error in the circuit court's findings, we further find no error in its decision to terminate petitioner's custodial and guardianship rights rather than imposing a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 21, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5